A. A. BROYLES to the use of J. W. Gibbs v. B. S. YOUNG and another.

*Justice's Judgment—Transcript—Effect of Docketing—Statute of Limitations.*

The transcript of a justice's judgment docketed in the superior court becomes, for the purposes of lien and execution, a superior court judgment, enforceable on the same property and by the same kind of execution issuable within the same limitation as is prescribed for the proper judgments of that court.

(*Ledbetter* v. *Osborne*, 66 N. C., 379; *Hutchison* v. *Symons*, 67 N. C., 156; *Birdsey* v. *Harris*, 68 N. C., 92, cited and approved.)

MOTION to issue Execution, heard on appeal at Spring Term, 1879, of YANCEY Superior Court, before *Graves, J.*

A notice was issued to defendants on the 4th of February, 1879, to appear before the clerk of the superior court and show cause why an execution should not issue upon a judgment obtained before a justice of the peace on the 1st of September, 1869, and docketed in the superior court on the 10th of February, 1870. The defendants appeared and insisted in their answer that the judgment was barred by the statute of limitations. No evidence was offered that any ex-

ecution had ever issued upon it; and more than seven years had elapsed since its rendition; but the clerk allowed the plaintiff's motion on the ground that it had become a judgment of the superior court by being docketed, and was only barred after the lapse of ten years from its rendition. His Honor affirmed this ruling and the defendants appealed.

Mr. J. M. Gudger, for plaintiff.
Messrs. A. T. & T. F. Davidson, for defendants.

DILLARD, J.   The question presented for our determination upon the record and accompanying case of appeal is, whether the transcript of a judgment in a justice's court is liable to the seven years bar to actions on justices' judgments under C. C. P., § 32, or to the limitation of ten years prescribed to judgments of the superior court under section 31 of the code.   The plaintiff's judgment, of which a transcript was docketed in the clerk's office of the superior court, was obtained on the 1st day of September, 1869, on a note dated the 28th of March 1860, and after being docketed no execution was issued or new action brought on the same up to the motion for execution to issue before the clerk of the superior court on the 8th of March, 1879.

It seems to us, having regard to the policy and purposes of the law in allowing a transcript to be docketed, to the language of the enactments as to the effect of the docketing, and the mode and manner of its enforcement, that the plaintiff could not have maintained an action on the justice's judgment on the day of his motion, but might have had an execution issued on his docketed judgment by leave of the court on personal notice to the adverse party.   C. C. P., § 256.

By the code of civil procedure, section 31, it is prescribed that an action on a justice's judgment must be commenced within seven years, and clearly if no transcript of the plain-

tiff's judgment had been docketed in the superior court, the bar of the statute would have attached upon it, by reason that more than seven years had elapsed without a new judgment obtained thereon, and without the same having been kept alive by the regular issuance of executions on the same; and being docketed, the motion for execution on the 8th of March, 1879, was equally barred unless the docketing of the transcript had the legal effect to put it under the ten years limitation prescribed to actions on judgments originally recovered in the superior courts; and so we must determine how the docketing a transcript affects a judgment.

A creditor, having recovered judgment in a justice's court, may have execution in that court extending to the tangible personal property, and to the person of his debtor in certain cases, but without the right thereunder to levy on and devote the land to its payment, or by any proceeding in that court to reach the choses in action of his debtor. Being thus restricted it was thought but right, from the greater efficiency of the superior court to help the creditor in getting the fruits of his judgment, to provide for the docketing of a transcript on the superior court judgment docket, and to give to such docketing the legal effect of a judgment of that court, so that the creditor might have the advantage of a lien on the land and a way to reach the choses in action through proceedings supplementary to execution.

In pursuance of this policy, it was accordingly enacted that the creditor might procure a transcript from the justice's court, and have the same entered on the judgment docket of the superior court, noting the day thereof, and from that day, the declaration of the statute is that the judgment of the justice's court shall be a judgment of the superior court *in all respects*, and executions thereon may be issued by the clerk of the superior court within the time, against the person or property, and with the like effect, as

executions issued on judgments originally recovered in the superior court. Bat. Rev., ch. 63, § 19.

Hence, as it appears to us, the legislative intent was to make the docketed transcript a judgment of the superior court for the purposes of lien and of execution, enforceable on the same property by the same kind of executions, and issuable within the same limitations as by law is prescribed for the lien and enforcement of the proper judgments of the superior court, including the power in the clerk of the court on notice to the adverse party to grant execution after the judgment became dormant as provided for in C. C. P., § 256.

Our idea is, that a creditor having a judgment in a justice's court may keep his judgment altogether in that court, and rely alone on such process for its enforcement as a justice of the peace may issue; and if he so do, the bar of the statute will apply to it at the end of seven years, unless before that time he sues and obtains a new judgment as he lawfully may do ; but if he elect to have a transcript docketed in the superior court, and it is done, then all right of execution in the justice's court is renounced and *in lieu* thereof, the creditor has the more efficient and far reaching executions and process of the superior court, and he acquires the same time within which to make his money as belongs to suitors in that court; the judgment of the justice of the peace in this last case remaining in that court with power only in the justice in certain cases to entertain motions in the cause looking to a vacation or modification of the judgment.

This conclusion to which we have arrived we think is not without support in decisions of this court and we will advert to some of them :

In *Ledbetter* v. *Osborne,* 66 N. C., 379, after the recovery of a judgment by Osborne and docketing of a transcript, Ledbetter sought to set aside the judgment on a petition in the

superior court on the ground of surprise and advantage taken of his ignorance, and this court on appeal held that the docketing of the transcript was to create a lien and for purposes of execution, and in that respect only was it a judgment of the superior court.

In *Hutchison* v. *Symons*, 67 N. C., 156, citing and approving *Ledbetter's* case, it is reiterated by this court that it was not the object to join to the fact of docketing a transcript any other effect than to constitute a lien of record on all the real estate of the debtor, and the right to have it sold by execution, and whilst this was so, the judgment still remained in the justice's court.

In *Birdsey* v. *Harris*, 68 N. C., 92, citing and approving both the cases hereinbefore mentioned, the doctrine is again announced that the judgment remains in the justice's court, and that any relief sought by the debtor against the judgment must be by a proceeding in the justice's court, thus reaffirming the principle that the docketing of the transcript had only the effect to make the judgment a judgment of the superior court for the purposes of lien and execution.

From these cases and the broad words of the statute, describing the judgment as a judgment of the superior court *in all respects*, it may safely be concluded that the judgment has a lien on land for the same length of time, counting from the day of docketing, and that executions may be sued out within three years, by leave of the court on notice to the adverse party in the same manner as in the case of a regular judgment of the superior court.

The effect of a docketed transcript is not only admissible within the words of the statute in this behalf, but it is material to a uniformity of proceedings and rights in the same court. And in many respects the construction we have given is necessary in order to give the creditor the benefit of that lien on land which was the chief object in view, as we have seen, in providing for the docketing in the superior

courts; for example, the lands of many debtors being wholly exempt by the homestead law, and the creditors held off until the expiration of that estate, it is but just that judgments in justices' courts should be allowed through transcript docketed to have the effect of liens and to endure as the liens of regular judgments of the superior courts; otherwise all persons having judgments for sums under $200 would be exposed to be barred at seven years and before the homestead estate expired, and therefore not having equal chance of payment out of the homestead as other larger judgment creditors.

We think, therefore, the plaintiff's transcript being docketed in the superior court and motion made for execution to issue short of ten years, but after the lapse of seven years, the same was not barred by the statute of limitations and it was competent on the motion to grant leave to issue execution as provided in section 256 of the code of civil procedure.

No error.                                        Affirmed.